## VERBACH VS. DAVIS.

In an action for damages against a vendor for fraudulently representing that an oil well had not been torpedoed, when in fact it had been ; evidence to show that the torpedo actually used was not effective is admissable.

Error to Common Pleas of Warren County. No. 16 July Term, 1883.

In June, 1875, one Jacob Sweeting leased his farm of forty acres for oil purposes to the defendant, C. W. H. Verbach for the term of twenty years, reserving one-tenth of the oil as royalty. In December, 1877, the Sweeting farm was sold to S. V. and S. H. Davis, subject to the oil lease to Verbach. About July 1st, 1877, Verbach had sunk a well 818 feet and obtained a slight flow of oil. Upon the trial the evidence showed that on July 7, 1877, a torpedo containing eight pounds of nitro-glycerine was exploded in the well. On March 28, 1881, S. V. and S. H. Davis purchased from Ver-

bach all his right, title and interest and claim whatsoever in and to a certain leasehold of the said Sweeting farm for $700. They afterwards brought an action of trespass on the case against Verbach and recovered a verdict of $412, on the ground that Verbach had told them at the time they bought the oil lease from him that the well had never been torpedoed; that in so doing he had deceived them, and had fraudulently induced them to purchase the leasehold. During the trial Verbach made various offers to prove that a torpedo containing three quarts or eight pounds of nitro-glycerine would not affect the oil-producing rock of that district. That such torpedoes were not considered of value by operators; that torpedoes containing from twenty to fifty quarts of nitro-glycerine were the ones in general use, and the only ones that affected the rock in this district. These offers were rejected and form the subjects of various errors. The answer to defendant's fourth point was also assigned for error; which point and the answer thereto were as follows: "If the jury believe from the evidence in the cause that the oil-bearing rock in the lease in controversy was a hard rock, and that the three-quart torpedo which defendant had exploded was not sufficient to materially affect the oil-bearing rock in said well, then the statement of defendant that no torpedo had been put in the well would not be such a fraud as to entitle the plaintiffs to recover." Answer. The defendant's fourth point is answered in the negative. We think the character of the rock has nothing to do with the question.

*R. Brown*, *D. I. Ball* and *C. C. Thompson*, *Esqs.*, for Verbach, the plaintiff in error, argued that the verdict could only be justified on the assumption that the torpedo in question had affected the well injuriously in some respect. Hence the offers to show the torpedo actually used by Verbach was not sufficiently large to do so should have been admitted and the fourth point affirmed. They also cited Note to 2 Addison on Torts, 1005; Marsh vs. Falkner, 40 N. Y., 562; Weed vs. Case, 55 Barb, 534; Bisbing vs. Bank, 93 Pa., 79.

*C. H. Noyes*, *Esq.*, *contra.*

3 Wa 12

The Supreme Court reversed the judgment of the Common Pleas on October 1st, 1883, in the following opinion, per

GREEN, J.:

It may be that the testimony offered by the defendant and rejected by the Court would not have affected the result if it had been received. But we cannot know that, and it seems to us it ought to have been received. Of course, if the torpedo that actually was exploded in the well was so small in bulk and so inefficient in force as to produce no effect whatever upon the rock at the place of explosion, the fact of the explosion would be an immaterial circumstance as affecting the value of the well. We understand this to have been the character of the proof offered. Some testimony of this sort did get into the case, but it did not go so far as the rejected offers. It is true that the marketable value of the 'property sold, rather than its real value, may have been in the contemplation of the purchasers if they were regarding only its speculative uses. But they were the owners of the land, desirous of getting rid of the lease, and the sale included in addition to the well all the machinery used in carrying it on, and also the leasehold which had a number of years to run. The written assignment made no mention of the well at all, and described only the leasehold, and expressed the whole consideration of $700 as being paid for that. In view of these facts, it seems to us that when the plaintiffs sought to get back the whole, or nearly the whole, of the purchase money paid upon an allegation that they were deceived by a representation that the well had been torpedoed, it was competent for the defendant to show that the torpedoing which was done was of such a character as not to affect the well at all, or constitute any test of its possible productiveness. Some of the witnesses in reply to the general question as to the difference in market value of a well, if it had been torpedoed or not, said that they could not answer without knowing what kind of a torpedo had been used, and that if it was a small one it would make little or no difference. If this was the case with witnesses, examined as experts, it might well be the case with a jury. We think a jury charged with the determination of such a question ought to have the benefit of all the facts which

attended the transaction. We are of opininon that all the rejected offers of testimony should have been allowed, and the assignments of error are therefore all sustained.

Judgment reversed and *venire de novo* awarded.